# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

THI NHAT LE PHUNG, Individually
and on Behalf of All Others Similarly
Situated,

      Plaintiff,

  v.

INDEPENDENT LIVING SYSTEMS, LLC,

     Defendant.

Case No. 1:23-cv-21470

**CLASS ACTION COMPLAINT and
<u>DEMAND FOR JURY TRIAL</u>**

# **TABLE OF CONTENTS**

I.     NATURE OF THE ACTION .................................................................................. 1

II.    JURISDICTION AND VENUE ........................................................................... 5

III.   PARTIES .............................................................................................................. 5

     A.    Plaintiff ..................................................................................................... 5

     B.    Defendant ................................................................................................. 7

IV.   FACTUAL BACKGROUND ............................................................................... 8

     A.    ILS's Privacy Policies ............................................................................ 8

     B.    The Data Breach ...................................................................................... 9

     C.    The Data Breach Notification Letter ..................................................... 11

     D.    Defendant Violated HIPAA's Requirements To Safeguard Data ................... 14

     E.    Defendant were On Notice That Highly Valuable PII and PHI of Its Patients Could Be Breached ................................................................. 16

     F.    Consequences of the Data Breach for Consumers ............................... 18

V.    CLASS ACTION ALLEGATIONS ................................................................... 20

     A.    Nationwide Class ................................................................................... 20

     B.    California Subclass ................................................................................ 20

VI.   CLAIMS ON BEHALF OF THE CLASS ......................................................... 23

     NEGLIGENCE ..................................................................................................... 23

     NEGLIGENCE *PER SE* ....................................................................................... 27

     UNJUST ENRICHMENT .................................................................................... 30

     DECLARATORY JUDGMENT ........................................................................... 32

     COUNT 5  CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, Cal. Civ. Code §§ 56, *et seq*. ................................... 34

     COUNT 6  CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq* ................................................................. 38

     COUNT 7  CALIFORNIA CUSTOMER RECORDS ACT ("CRA"), Cal. Civ. Code §§ 1798.80, *et seq*. ...................................................... 39

VII.  REQUEST FOR RELIEF ................................................................................... 41

VIII. JURY TRIAL DEMANDED ............................................................................. 43

Plaintiff Thi Nhat Le Phung ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Independent Living Systems, LLC ("ILS" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

I.     **NATURE OF THE ACTION**

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information ("PII") and protected health information ("PHI") of more than 4.2 million individuals.

2.     Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised as a result of ILS's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) timely warn Plaintiff and Class members of ILS's inadequate information security practices; and (iii) effectively secure computer hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities.  ILS's conduct amounts to negligence.

3.     Prior to and through July 5, 2022, ILS obtained the PII and PHI of Plaintiff and Class Members, including by collecting it directly from Plaintiff and Class Members and/or by collecting it from their medical providers who were customers of ILS.

4.     Prior to and through July 5, 2022, ILS stored the PII and PHI of Plaintiff and Class Members unencrypted and in an Internet-accessible environment on ILS' computer network.

5.     By obtaining, collecting, using, and deriving a benefit from the PII and PHI of Plaintiff and Class Members, ILS assumed legal and equitable duties, under various statutes, regulations, and common law, to those individuals to protect and safeguard the information from

unauthorized access and intrusion.

6.      Medical and financial records represent the most sensitive information available concerning a person's private affairs.  These records reveal intimate and personal aspects of the human condition, such as illnesses that might carry social stigma and details about substance abuse, family planning and mental health.  Congress has passed legislation under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in order to protect this highly confidential data, because in the wrong hands, bad actors may target and exploit the most sensitive and vulnerable populations among the public.

7.      Defendant is a covered business associate under HIPAA (45 C.F.R. § 160.103) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. 79.  Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH"), where the reach of the HIPAA Security Rule was extended to Business Associates of Covered Entities, who also had to comply with certain Privacy Rule standards and the Breach Notification Rule.  *See* 42 U.S.C. §17921 *et seq*., 45 C.F.R. § 160.103.

8.      As a business associate to its covered entity subsidiaries Florida Community Care LLC and HPMP of Florida Inc., doing business as Florida Complete Care under HIPAA and other health plans, ILS had obligations to safeguard electronic forms of medical information.  This lawsuit concerns ILS's failure to carry that burden and the resulting harm to Plaintiff and the Class.

9.      On March 14, 2023, ILS confirmed in a Supplemental Notice of Data Event posted

on its website that it had suffered a data event that impacted personal and/or protected health information ("PII" and "PHI") (the "Data Breach").

10.     ILS detected the attack on July 5, 2022 when some of its systems "became inaccessible" and later learned that an unauthorized actor obtained access to certain ILS systems between June 30, 2022 and July 5, 2022 and during the same period "some information stored on the ILS network was acquired by the unauthorized actor, and other information was accessible and potentially viewed."

11.     ILS's General Counsel & Chief Compliance Officer, Stuart Williams, reported to the Office of the Maine Attorney General that the total number of persons affected by the Data Breach was 4,226,508; that the breach occurred on June 3, 2022; that the Data Breach was "discovered" on January 17, 2023; that consumers notification was given on March 14, 2023; and that victims of the Data Breach were offered 12 months of Experian credit monitoring and restoration services.

12.     ILS admitted that information compromised in the Data Breach varied by individual and included an incredible array of highly sensitive and immutable data that represents a gold mine for data thieves.  The Supplemental Notice of Data Event discloses that the breach includes exposure of: names, addresses, dates of birth, drivers' license numbers, state identification numbers, Social Security numbers, financial account information, medical record numbers, Medicare or Medicaid identification numbers, CIN#s (Clinical Integrated Network numbers), mental or physical treatment and condition information, food delivery information, billing/claims information, patients names, health insurance information, and other sensitive medical records and thus includes personally identifiable information ("PII") and protected health information ("PHI") as defined by HIPAA that Defendant collected and maintained.

13. Even though ILS discovered the breach as early as July 5, 2022, the methodologies it employed in responding to the Data Breach delayed the provision of individual notice to the Data Breach victims for eight-and-one-half months.

14. On or around March 14, 2023, ILS began notifying various states Attorneys General of the Data Breach.

15. On or around March 14, 2023, ILS began notifying Plaintiff and Class Members of the Data Breach.

16. As a result of ILS's actions and this delayed response, Plaintiff and Class members had no idea their PII and PHI had been compromised, and that they were, and will continue to be, at significant risk of identity theft and various forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive PII and PHI which will continue for their respective lifetimes.

17. Plaintiff and the Class experienced injury and damages from: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the amount of out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) ongoing reasonable identity-defense and credit monitoring services made necessary as mitigation measures; (vi) ILS's retention of profits attributable to Plaintiff's and other customers' PII and PHI that ILS failed to adequately protect; (vii) economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff is now exposed to; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this Data Breach; (ix) overpayments of ILS's products and/or services which Plaintiff purchased; and (x) the continued

and increased risk to their PII and PHI which remains in the hands of unauthorized third parties and available for them to abuse.

## II.   JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.  Upon information and belief, the number of class members is well over 100, some of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19.     Under 28 U.S.C. § 1332(d)(10), ILS is a citizen of Florida because it is a limited liability company formed under Florida law with its principal place of business in Miami, Florida.

20.     This Court has personal jurisdiction over Defendant because it is headquartered in Florida; the wrongful acts alleged in this Complaint were committed in Florida, among other venues; and Defendant has intentionally availed themselves of this jurisdiction by marketing and selling its products and services in Florida.

21.     Venue is proper in this District under (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and 28 U.S.C. § 1391(d) because the transactions giving rise to Plaintiff's claims occurred in Florida; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## III.   PARTIES

### A.   Plaintiff

22.     Plaintiff is an individual who, upon information and belief, had her PII and/or PHI compromised in the Data Breach, and brings this action on behalf of herself and all those similarly situated both across the United States.  Because Defendant has exclusive but incomplete knowledge of what information was compromised for each individual, including PHI, Plaintiff

reserves the right to supplement her allegations with additional facts and injuries as they are discovered.

23.     Plaintiff Thi Nhat Le ("Lily") Phung ("Plaintiff") is and was at all relevant times, a citizen and resident of the State of California and resides in San Francisco, California.  Plaintiff is a member of a health plan that contracted with ILS.  ILS notified Plaintiff Phung that her PII and PHI was compromised in the ILS Data Breach by letter dated March 14, 2023.  Plaintiff Phung was informed that information related to her was "included in one or more files acquired by the unauthorized actor or present in one or more files that resided on an area of the ILS network that was accessed by the unauthorized actor: name, date of birth, and Social Security number."

24.     As a direct and proximate result of the Data Breach, Plaintiff Phung has made reasonable efforts to mitigate the impact of the Data Breach and the risk of future injury, including, but not limited to: conducting research about the Data Breach; discussing the breach with Plaintiff's family; and reviewing her credit reports and financial account statements for any indication of actual or attempted identity theft or fraud.

25.     Plaintiff Phung values her privacy and is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

26.     Plaintiff Phung suffered actual injury from having Plaintiff's PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff's PII and PHI, a form of property that ILS obtained from Plaintiff; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

27.     As a result of the Data Breach, Plaintiff Phung anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data

Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**B.**     **Defendant**

28.     Independent Living Systems, LLC is an active Florida limited liability company registered on May 8, 2002, with its principal place of business located at 4601 NW 77th Avenue, Miami, FL 33166.

29.     ILS offers a range of services including clinical and third-party administrative services to managed care organizations, home and community-based programs, and other medical providers that serve patient populations in the Medicare, Medicaid, and Dual-Eligible Market.  ILS was formed to assist health plans and other organizations in the delivery of community-based services as an alternative to costly institutional-based care.

30.     ILS developed and implemented one of the first "long-term care diversion programs" to enable patients residing in nursing homes to be able to live a home, at a lower cost, with community-based resources to support them.   ILS provides assistance beyond clinical services at every stage of care from hospitalization to the treatment of chronic illnesses to personalized care management and nutritional support including medically tailored meals.

31.     ILS was founded in 2001 and operates 10 offices across the United States, including the headquarters in Miami; and offices in Tallahassee, Florida; Islandia, NY; Glendale, CA; Oakland, CA; and San Diego, CA.  Its "QTS Data Center" is located at 11234 NW 20th Street, Miami, FL 33172.

32.     ILS touts its "award winning technology platform," which is key in delivering its management services to its healthcare customers.  ILS claims it has invested more than $35 million in this proprietary technology platform.

33.     ILS's various programs are "supported by eCare, a proprietary technology and

analytics platform that integrates the spectrum of services for LTSS, Medicare and Medicaid beneficiaries."[1]

34.    ILS has more than 800 employees in 10 office locations; partners with more than 30 clients, including two 5 Star Medicare Advantage plans; and provides one or more services to the five largest Medicare Advantage plans in the U.S.

35.    ILS services more than 4 million patient members including 250,000 Medicaid and dual eligible members.

36.    ILS generates approximately $117 million in annual revenue.

## IV.    FACTUAL BACKGROUND

### A.    ILS's Privacy Policies

37.    As a condition of receiving medical services, ILS requires that its patients entrust it with highly sensitive PII and PHI. In the ordinary course of receiving services, patients are required to provide sensitive personal and private information such as names, Social Security numbers, dates of birth, addresses, and sensitive medical and health insurance information, among other things.

38.    In its Online Privacy Policy, ILS states: "We collect information from you when you apply for a position on our Careers page form, when you purchase meals, or when you reach out to us via our Contact forms."  The policy, however, "applies only to information collected through our website and not to information collected offline." [2]

39.    ILS promises its patients that it is "required by law to maintain the privacy and security of your protected health information. We implement a variety of security measures to

---

[1]  https://ilshealth.com/managed-long-term-services-and-supports/.
[2]  *See* ILS Privacy Policy, https://ilshealth.com/privacy-policy/

maintain the safety of your personal information when you access your personal information."[3]

40.     ILS's Notification of Breach clause provides: "We will promptly notify you if a breach occurs that may have compromised the privacy or security of your information."[4]

41.     ILS also has policies regarding the disclosure of information to outside parties: "We do not sell, trade, or otherwise transfer to outside parties your personally identifiable information. This does not include trusted third parties who assist us in operating our website, conducting our business, or servicing you, so long as those parties agree to keep this information confidential. We may also release your information when we believe release is appropriate to comply with the law, enforce our site policies, or protect ours or others rights, property, or safety. However, non-personally identifiable visitor information may be provided to other parties for marketing, advertising, or other uses."[5]

**B.     The Data Breach**

42.     The timeline of the Data Breach remains somewhat mysterious with conflicting information and extensive delays.

43.     In later publications, ILS disclosed that the Data Breach occurred between June 30, 2022 and July 5, 2022. The Maine Office of the Attorney General website provides that the Data Breach occurred on June 3, 2022. The California Attorney General website provides that the Data Breach occurred on June 30, 2022.

44.     ILS reported that it discovered the Data Breach on July 5, 2022 related to the "inaccessibility of certain computer systems on our network," which is a way of describing a ransomware attack. The Maine Office of the Attorney General website provides that the Data

---

[3] *Id.*
[4] *Id.* at Part C.
[5] *Id.*

9

Breach was discovered on January 17, 2023.

45.     An entry on the Department of Health and Human Services, Office of Civil Rights ("DHHS OCR") Breach Portal[6] provides that Independent Living Systems, LLC of Florida reported a data breach as a HIPAA "Business Associate" involving 501 "Individuals Affected" and which was submitted on September 2, 2022.  The type of breach was "Hacking/IT Incident" and the location of the breached information was a "Network Server."

46.     Healthcare entities facing a 60-day deadline to notify the DHHS OCR about HIPAA breaches affecting 500 or more individuals will sometimes submit reports with very rough estimates about how many people were affected as the investigations into their data incidents continue.  As of March 24, 2023, there was no additional report for Independent Living Systems, LLC regarding the Data Breach on the DHHS OCR Breach Portal.

47.     ILS claims that in September 2022, it posted "preliminary notice" of the Data Breach on its website and to "our primary state and federal regulators," but did not explain what was disclosed or how 4.2 million patients were supposed to know to check the website or unnamed state and federal regulators to learn that their PHI and/or PHI was at risk and they should take steps to protect their data from identity theft and fraud.

48.     The preliminary notice no longer is available on the ILS website.

49.     ILS claims that an unnamed forensic and outside cybersecurity specialist(s) began work on July 5, 2022, bur for an unexplained reason, was not able to produce a report until January 17, 2023.

50.     ILS claims it was then required to "validate" the results of this long-awaited report, which took another two months, before the Data Breach victims could be notified to take steps to

---

[6] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

protect their data, including their immutable PHI.

51.     The Supplemental Notice of Data Event discloses that the breach includes exposure of names, addresses, dates of birth, drivers' license numbers, state identification numbers, Social Security numbers, financial account information, medical record numbers, Medicare or Medicaid identification numbers, CIN#s (Clinical Integrated Network numbers), mental or physical treatment and condition information, food delivery information, billing/claims information, patients names, health insurance information, and other sensitive medical records and thus includes personally identifiable information ("PII") and protected health information ("PHI") as defined by HIPAA that Defendant collected and maintained.

52.     The disclosure to the Maine Office of Attorney General provides that the total number of persons affected by the Data Breach is 4,226,508.  This was reported to be the largest health data breach in 2023 as of March 24, 2023.

C.      **The Data Breach Notification Letter**

53.     ILS issued notification to impacted individuals as both a "direct provider of services" and on behalf of certain data owner clients and covered entity health plans.

54.     The notification to Plaintiff and Class Members provides that files that contained PII and PHI were "acquired by the unauthorized actor."

55.     ILS's form Data Breach notice letters to affected patients stated *inter alia* the following:

> Independent Living Systems, LLC ("ILS" or "We") provides a variety of managed services to several partner health plans and their enrollees or referred individuals, including [ ].  ILS's services include plan administration, nutrition support, and comprehensive care management.  We are committed to protecting confidentiality and security of the information we gather in providing these services.

> We are writing to make you aware of a data incident that may impact the privacy of your personal information and/or protected health information ("PHI").  Please read this letter carefully, as it provides details about the incident and our response.

**What Happened?** On July 5, 2022, we experienced an incident involving the inaccessibility of certain computer systems on our network. We responded to the incident immediately and began an investigation with the assistance of outside cybersecurity specialists. Through our response efforts, we learned that an unauthorized actor obtained access to certain ILS systems between June 30 and July 5, 2022. During that period, some information stored on the ILS network was acquired by the unauthorized actor, and other information was accessible and potentially viewed. Upon containing the incident and reconnecting our computer systems, we began to review the potentially affected data to determine whether it contained any personal information or PHI, and if so, to whom such information related.

**What Information Was Involved?** As previewed above, we conducted a comprehensive data review exercise to understand the scope of potentially affected information and identify the individuals to whom such information relates. On January 17, 2023, we received the results of this review and determined that the following types of information related to you were included in one or more files acquired by the unauthorized actor:  name, [ ]. [ ]. [ ].  Please note that we have no evidence or other indication that identity theft or fraud occurred as a result of this incident. We are providing this notice out of an abundance of caution.

**What We Are Doing**. We take this incident and the security of information entrusted to us very seriously. In response to the incident, we promptly took steps to mitigate any risk of compromise to your information and better prevent a similar event from reoccurring. These actions included: (1) fortifying the security of our firewall; (2) utilizing the forensic specialists engaged to monitor our network and remediate any suspicious activity identified; (3) rotating and increasing the complexity of all users' credentials, and (4) providing notification to potentially affected individuals as quickly as possible. We are enhancing our existing training protocols and other internal procedures that relate to data protection and security. In accordance with best practices, we encourage you to review your account statements, explanation of benefits, and credit reports carefully for unexpected activity and to report any questionable activity to the associated institutions immediately.

As an added precaution, we are providing you with access to [ ] months of complimentary identify monitoring and restoration services through Experian, along with guidance on how to protect against the possibility of information misuse. We are covering the cost of these services, but due to privacy restrictions, you will need to complete the activation process yourself.

**What You Can Do.** You can find out more about how to protect your information in the enclosed *Steps you Can Take to Protect Information*. There, you will also find additional details about the identity monitoring services we are offering and how to enroll.

**For More Information.**  If you have questions about this incident that are not addressed in this letter, please contact our dedicated assistance line …

We apologize for any inconvenience this incident may cause you and remain committed to safeguarding the privacy and security of information in our possession.

Sincerely,
Stuart F. Williams
General Counsel & Chief Compliance Officer
Independent Living Systems, LLC

56.     ILS did not explain in the individual notice or Supplemental Notice of Data Event posted on its website why it took eight and a half months from July 5, 2022 until March 14, 2023 for the forensic specialists to "understand the scope of potentially affected information and identity of individuals to whom such information" related and provide individual notice to the victims of the Data Breach.

57.     ILS did not identify the forensic specialists ILS engaged in the individual notice or Supplemental Notice of Data Event posted on its website.

58.     ILS did not explain in the individual notice or Supplemental Notice of Data Event posted on its website whether ILS engaged threat intelligence professionals to determine if PII and/or PHI, traced to the ILS breach, had been discovered for sale on the Dark Web from July 2022 to March 2023, and if not, why not.

59.     ILS did not explain in the individual notice or Supplemental Notice of Data Event posted on its website whether ILS engaged threat intelligence professionals to determine if financial account information, traced to the ILS breach, had been discovered for sale on the Dark Web from July 2022 to March 2023, and if not, why not.

60.     ILS did not explain in the individual notice or Supplemental Notice of Data Event posted on its website whether ILS worked with law enforcement agencies of federal, state or local

governments to determine if PHI traced to the ILS breach had been discovered for sale on the Dark Web from July 2022 to March 2023, and if not, why not.

61.     ILS did not explain in the individual notice or Supplemental Notice of Data Event posted on its website why there was "no evidence or other indication that identity theft or fraud occurred as a result of this incident" and whether it was because ILS refused to undertake the necessary steps to uncover evidence of such identity theft or fraud.

62.     ILS did not disclose in the individual notice or Supplemental Notice of Data Event posted on its website any of the details about the nature of the attack; the root cause of the breach; the steps undertaken by the attacker; the location(s) of the breach within the ILS network; the volume of data exfiltrated; or the vulnerabilities in the ILS systems uncovered in the forensic investigation that led to the Data Breach.

63.     ILS did not disclose in the individual notice or Supplemental Notice of Data Event posted on its website when or what information was provided in its "preliminary notice to its primary state and federal regulators" or in any supplemental notices to the state and federal regulators.

64.     ILS did not disclose in the individual notice or Supplemental Notice of Data Event posted on its website whether its network maintained the required security updates, penetration testing, vulnerability testing, third party auditing, prompt purging of data no longer needed to be maintained in the systems, or was in possession of relevant data security certifications.

65.     ILS did not disclose in the individual notice or Supplemental Notice of Data Event posted on its website why it was necessary for ILS to bolster its perimeter firewalls or enhance training programs following the Data Breach.

D.     **Defendant Violated HIPAA's Requirements To Safeguard Data**

66.     Defendant had duties to ensure that all information it collected and stored was

14

secure, and that it maintained adequate and commercially-reasonable data security practices to ensure the protection of patients' and managed care plan members' PII and PHI.

67. Defendant is covered by HIPAA (*see* 45 C.F.R. § 160.103) and as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

68. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

69. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

70. HIPAA requires that Defendant implement appropriate safeguards for this information.

71. HIPAA requires that Defendant provides notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons—*i.e.* non-encrypted data.

72. Despite these requirements, Defendant failed to comply with its duties under HIPAA and its own Privacy Practices. Indeed, Defendant failed to:

a) Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b) Adequately protect Plaintiff's and the Class Members' PII and PHI;

c)      Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d)      Protect against any reasonably anticipated threats or hazards to the security or integrity of such information, in violation of 45 C.F.R. § 164.306(a)(2);

e)      Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

f)      Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

g)      Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

h)      Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3); and/or

i)      Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4).

73.      Defendant failed to comply with its duties under HIPAA and its own privacy policies despite being aware of the risks associated with unauthorized access of members' PII and PHI.

**E.**      **Defendant were On Notice That Highly Valuable PII and PHI of Its Patients Could Be Breached**

74.      Defendant was, or should have been, aware that it was collecting highly valuable data, for which Defendant knew, or should have known, there was an upward trend in data breaches in recent years.[7] Accordingly, Defendant was on notice of the harms that could ensue if it failed

---

[7]      *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited Sept. 27, 2019) ("Our healthcare statistics clearly show there has been an upward trend in data breaches over the past 9 years, with 2018 seeing more data breaches reported than any other year since records first started being published.").

to protect patients' data.

75.     As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (PII)" so that these companies can take the necessary precautions to thwart such attacks.[8]

76.     PII and PHI is a valuable commodity to identity thieves.  Compromised PII and PHI is traded on the "cyber black-market." As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, social security numbers and other PII and PHI directly on various dark web[9] sites making the information publicly available.[10]

77.     Further, medical databases are particularly high value targets for identity thieves. According to one report, a stolen medical identity has a $50 street value on the black market, whereas a Social Security number sells for only $1.[11]

---

[8]     Reuters, *FBI warns healthcare firms they are targeted by hackers*, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last visited February 23, 2023).

[9]     The dark web refers to encrypted content online that cannot be found using conventional search engines and can only be accessed through specific browsers and software. MacKenzie Sigalos, *The dark web and how to access it* (Apr. 14, 2018), https://www.cnbc.com/2018/04/13/the-dark-web-and-how-to-access-it.html (last visited February 23, 2023).

[10]     *Here's How Much Your Personal Information Is Selling for on the Dark Web*, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (l last visited February 23, 2023); McFarland et al., *The Hidden Data Economy*, at 3, *available at* https://www.mcafee.com/enterprise/en-us/assets/reports/rp-hidden-data-economy.pdf (last visited February 23, 2023).

[11]     *Study: Few Aware of Medical Identity Theft Risk*, Claims Journal (June 14, 2012), https://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited February 23, 2023).

### F.     Consequences of the Data Breach for Consumers

78.     Plaintiff and the Class have suffered actual harm and will continue to be harmed as a result of ILS's conduct.  ILS failed to institute adequate security measures and neglected system vulnerabilities that led to a Data Breach.  ILS's failure to keep Plaintiff's and Class Members' PII and PHI secure has severe ramifications.  Given the sensitive nature of the PII and PHI stolen in the Data Breach – names, addresses, dates of birth, Social Security numbers, health insurance information, medical record numbers, and patient account numbers – hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future.  Class Members may be subject to blackmail from nefarious actors concerning the disclosure of their medical records.  As a result, Plaintiff has suffered injury and faces an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

79.     Plaintiff's and Class Members' stolen PII and PHI may now be circulating on the Dark Web and it is highly valuable.  Malicious actors use PII and PHI to, among other things, gain access to consumers' bank accounts, social media, and credit cards.  Malicious actors can also use consumers' PII and PHI to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create synthetic identities.

80.     Further, malicious actors often wait months or years to use the PII and PHI obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed.  These bad actors will also re-use stolen PII and PHI, meaning individuals can be the victim of several cybercrimes stemming from a single data breach.  Moreover, although elements of some Class Members' data may have been compromised in other data breaches, the fact that the Breach centralizes the PII and PHI and identifies the victims as

ILS's current, former, or prospective customers materially increases the risk to Plaintiff and the Class.

81.     The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[12] Moreover, there is often significant lag time between when a person suffers harm due to theft of their PII and PHI and when they discover the harm.

82.     Plaintiff will therefore need to spend time and money to continuously monitor her accounts for years to ensure her PII and PHI obtained in the Data Breach is not used to harm her. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of ILS's Data Breach.  In other words, Plaintiff has been harmed by the value of identity protection services she must purchase in the future to ameliorate the risk of harm she now faces due to the Data Breach.

83.     Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's access to Plaintiff's PII and PHI that was permitted without authorization by ILS.  This market value for access to PII and PHI can be determined by reference to both legitimate and illegitimate markets for such information.

84.     In sum, Plaintiff and Class Members were injured as follows: (i) theft of their PII and PHI and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII and PHI; (iii) loss of value of their PII and PHI; (iv) the lost value of access to Plaintiff's

---

[12]  U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (June 2007), available at https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07- 737/html/GAOREPORTS-GAO-07-737.htm (last visited May 8, 2022).

and Class Members' PII and PHI permitted by ILS; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of ILS's Data Breach; (vi) ILS's retention of profits attributable to Plaintiff's and Class Members' PII and PHI that ILS failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to ILS for goods and services purchased, as Plaintiff reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII and PHI, which was not the case; and (x) nominal damages.

## V. CLASS ACTION ALLEGATIONS

### A. Nationwide Class

85. In accordance with Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiff brings this case as a class action on behalf of a Nationwide Class (the "Nationwide Class" or the "Class"), defined as follows:

> All persons in the United States whose PII and PHI was maintained on the ILS systems that were compromised as a result of the breach announced by ILS on or around March 14, 2023.

86. The Nationwide Class asserts claims against Defendant for negligence (Count 1); negligence *per se* (Count 2); unjust enrichment (Count 3); and declaratory judgment (Count 4).

### B. California Subclass

87. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek certification of California state claims in the alternative to the nationwide claims, as well as

statutory claims under state data breach statutes and consumer protection statutes (Counts 5 through 7), on behalf of a separate statewide subclass for California (the "California Subclasses"), defined as follows:

> All natural persons residing in California whose PII and PHI was maintained on the ILS systems that were compromised as a result of the breach announced by ILS on or around March 14, 2023.

88.     Excluded from the Nationwide Class and the California Subclass are Defendant, any entity in which either Defendant has a controlling interest, and either Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class and the California Subclass are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

89.     The Nationwide Class and the California Subclass are so numerous that joinder of all members is impracticable. On information and belief, the Nationwide Class and the California Subclass have more than 1,000 members. Moreover, the disposition of the claims of the Nationwide Class and the California Subclass in a single action will provide substantial benefits to all parties and the Court.

90.     There are numerous questions of law and fact common to Plaintiff and Class Members.  These common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant owed Plaintiff and other Class Members a duty to implement and maintain reasonable security procedures and practices to protect their PII and PHI, and whether it breached that duty;

b.     Whether Defendant continues to breach duties to Plaintiff and other Class Members;

c.     Whether Defendant's data security systems before the Data Breach met industry standards;

d.      Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay;

e.      Whether Plaintiff and other Class Members' PII and PHI was compromised in the Data Breach; and

f.      Whether Plaintiff and other Class Members are entitled to damages as a result of Defendant's conduct.

91.     Plaintiff's claims are typical of the Class's claims.  Plaintiff suffered the same injury as Class Members—i.e., Plaintiff's PII and PHI was compromised in the Data Breach.

92.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including data breach class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has interests that conflict with those of the proposed Class.

93.     Defendant has engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from this conduct that affect Plaintiff and other Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

94.     A class action is the superior method for the fair and efficient adjudication of this controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized

litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class Members. The same common documents and testimony will be used to prove Plaintiff's claims

95.     A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant have acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## VI.   CLAIMS ON BEHALF OF THE CLASS

### COUNT 1

### NEGLIGENCE

**On Behalf of Plaintiff and the Nationwide Class or Alternatively, On Behalf Of Plaintiffs and the California Subclass**

96.     Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

97.     ILS collected sensitive PII and PHI from Plaintiff and Class Members when using ILS products and services.

98.     ILS owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing ILS's security systems to ensure that Plaintiff's and Class Members' PII and PHI in ILS's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts,

including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

99.     ILS's duty to use reasonable care arose from several sources, including but not limited to those described herein.

100.    ILS had common law duties to prevent foreseeable harm to Plaintiff and the Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate data security practices. Not only was it foreseeable that Plaintiff and Class Members would be harmed by ILS's failure to protect their PII and PHI because hackers routinely attempt to steal such information and use it for nefarious purposes, ILS knew that it was more likely than not Plaintiff and other Class Members would be harmed if it allowed such a breach.

101.    ILS's duty to use reasonable security measures also arose as a result of the special relationship that existed between ILS, on the one hand, and Plaintiff and Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members entrusted ILS with their PII and PHI and sensitive healthcare and other personal information. ILS alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

102.    Defendant is covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

103.    These rules establish national standards for the protection of patient information,

including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

104.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

105.    HIPAA requires that Defendant implement appropriate safeguards for this information.

106.    ILS's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII and PHI by companies such as ILS. Various FTC publications and data security breach orders further form the basis of ILS's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

107.    ILS admits that it has a responsibility to protect consumer data, that it is entrusted with this data, and that it did not live up to its responsibility to protect the PII and PHI at issue here.

108.    ILS knew or should have known that its computing systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential PII and PHI.

109.    ILS also had a duty to safeguard the PII and PHI of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require ILS to reasonably safeguard sensitive PII and PHI, as detailed herein.

110.    Timely, adequate notification was required, appropriate and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles; avoid unauthorized charges to their credit or debit card accounts; cancel or change usernames and passwords on compromised accounts; monitor their account information and credit reports for fraudulent activity; contact their banks or other financial institutions that issue their credit or debit cards; obtain credit monitoring services; and take other steps to mitigate or ameliorate the damages caused by ILS's misconduct.

111.    ILS breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. ILS breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII and PHI of Plaintiff and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations protecting the PII and PHI at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff' and the Class Members' PII and PHI in ILS's possession had been or was reasonably believed to have been, stolen or compromised.

112.    But for ILS's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

113.    ILS's failure to take proper security measures to protect the sensitive PII and PHI of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff' and Class Members' PII and PHI.

114.    Plaintiff and Class Members were foreseeable victims of ILS's inadequate data security practices, and it was also foreseeable that ILS's failure to provide timely and adequate

notice of the Data Breach would result in injury to Plaintiff and Class Members as described in this Complaint.

115.    As a direct and proximate result of ILS's negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial.  Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; lost value of access to their PII and PHI permitted by ILS; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of ILS's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages and other economic and non-economic harm.

**COUNT 2**

**NEGLIGENCE *PER SE***

**On Behalf of Plaintiff and the Nationwide Class or Alternatively, On Behalf Of Plaintiff and the California Subclass**

116.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

117.    Defendant is covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such is required

27

to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

118.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

119.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

120.    HIPAA requires that Defendant implement appropriate safeguards for this information.

121.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, also prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as ILS of failing to use reasonable measures to protect PII and PHI.

122.    The FTC publications and orders also form the basis of ILS's duty.

123.    ILS violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards. ILS's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as ILS, including, specifically the damages that would result to Plaintiff and Class Members.

124.     In addition, under state data security statutes, ILS had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff' and Class Members' PII and PHI.

125.     ILS's violation of HIPAA and Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

126.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

127.     The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

128.     ILS breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff' and Class Members' PII and PHI.

129.     Plaintiff and Class Members were foreseeable victims of ILS's violations of the HIPAA, the FTC Act, and state data security statutes. ILS knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff' and Class Members' PII and PHI would cause damage to Plaintiff and Class Members.

130.     But for ILS's violation of the applicable laws and regulations, Plaintiff' and Class Members' PII and PHI would not have been accessed by unauthorized parties.

131.     As a direct and proximate result of ILS's negligence *per se*, Plaintiff and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity

theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII and PHI; lost value of access to their PII and PHI permitted by ILS; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of ILS's Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## COUNT 3

### UNJUST ENRICHMENT

**On Behalf of Plaintiff and the Nationwide Class or Alternatively, On Behalf Of Plaintiff and the California Subclass**

132.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

133.    Plaintiff and Class Members have an interest, both equitable and legal, in the PII and PHI about them that was conferred upon, collected by, and maintained by ILS and that was ultimately stolen in the ILS Data Breach.

134.    ILS was benefitted by the conferral upon it of the PII and PHI pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. ILS understood that it was in fact so benefitted.

135.    ILS also understood and appreciated that the PII and PHI pertaining to Plaintiff and Class Members was private and confidential and its value depended upon ILS maintaining the privacy and confidentiality of that PII and PHI.

136.    But for ILS's willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted with ILS.

137.    Because of its use of Plaintiff' and Class Members' PII and PHI, ILS sold more services and products than they otherwise would have. ILS was unjustly enriched by profiting from the additional services and products they were able to market, sell, and create to the detriment of Plaintiff and Class Members.

138.    ILS also benefitted through its unjust conduct by retaining money that they should have used to provide reasonable and adequate data security to protect Plaintiff' and Class Members' PII and PHI.

139.    ILS also benefitted through its unjust conduct in the form of the profits they gained through the use of Plaintiff' and Class Members' PII and PHI.

140.    It is inequitable for ILS to retain these benefits.

141.    As a result of ILS's wrongful conduct as alleged in this Complaint (including among things its failure to employ adequate data security measures, its continued maintenance and use of the PII and PHI belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), ILS has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

142.    ILS's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff' and Class Members' sensitive PII and PHI, while at the same time failing to maintain that information secure from

intrusion and theft by hackers and identity thieves.

143.    It is inequitable, unfair, and unjust for ILS to retain these wrongfully obtained benefits. ILS's retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

144.    The benefit conferred upon, received, and enjoyed by ILS was not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for ILS to retain the benefit.

145.    ILS's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their PII and PHI and has caused the Plaintiff and Class Members other damages as described herein.

146.    Plaintiff has no adequate remedy at law.

147.    ILS is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on ILS as a result of its wrongful conduct, including specifically: the value to ILS of the PII and PHI that was stolen in the Data Breach; the profits ILS received and is receiving from the use of that information; the amounts that ILS overcharged Plaintiff and Class Members for use of ILS's products and services; and the amounts that ILS should have spent to provide reasonable and adequate data security to protect Plaintiff' and Class Members' PII and PHI.

### COUNT 4

### DECLARATORY JUDGMENT

**On Behalf of Plaintiff and the Nationwide Class or Alternatively, On Behalf
Of Plaintiff and the California Subclass**

148.    Plaintiff repeats and realleges the allegations contained in Sections I through V as

if fully set forth herein.

149.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. The Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

150.    An actual controversy has arisen in the wake of the ILS Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and PHI and whether ILS is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff continue to suffer injury as a result of the compromise of their PII and PHI and remain at imminent risk that further compromises of their PII and PHI will occur in the future given the publicity around the Data Breach and the nature and quantity of the PII and PHI stored by ILS.

151.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

152.    ILS continues to owe a legal duty to secure consumers' PII and PHI and to timely notify consumers of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various state statutes;

153.    ILS continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI.

154.    The Court also should issue corresponding prospective injunctive relief requiring ILS to employ adequate security protocols consistent with law and industry standards to protect consumers' PII and PHI.

155.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an

33

adequate legal remedy, in the event of another data breach at ILS. The risk of another such breach is real, immediate, and substantial. If another breach at ILS occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

156.   The hardship to Plaintiff if an injunction does not issue exceeds the hardship to ILS if an injunction is issued. Among other things, if another massive data breach occurs at ILS, Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to ILS of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and ILS has a pre-existing legal obligation to employ such measures.

157.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at ILS, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose confidential information would be further compromised.

## COUNT 5

**CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT,
Cal. Civ. Code §§ 56, *et seq.***

**On Behalf of Plaintiff and the California Subclass**

158.   The California Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the California Subclass, repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

159.   California's Confidentiality of Medical Information Act ("CMIA") requires "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information

[to] do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101. "Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." *Id.*

160.    The CMIA further requires that "[a]n electronic health record system or electronic medical record system . . . [p]rotect and preserve the integrity of electronic medical information." Cal. Civ. Code § 56.101(b)(1)(A).

161.    Plaintiff and California Subclass members are "patient[s]," "whether or not still living, who received health care services from a provider of health care and to whom medical information pertains" pursuant to § 56.05(l) of the CMIA.

162.    Defendant is a "provider of healthcare" as defined and set forth in § 56.05(o) of the CMIA and/or "contractor" as defined and set forth in § 56.05(d) of the CMIA, or a "business organized for the purpose of maintaining medical information in order to make the information available to an individual or to a provider of health care at the requests of the individual or a provider health care, for purposes of allowing the individual to manage their information, or for the diagnosis and treatment of the individual" as defined and set forth in § 56.06, "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information."  Cal. Civ. Code § 56.101.

163.    Plaintiff and California Subclass Members' PII and PHI compromised in this Data Breach is "Medical information" and is "Individually identifiable" as those terms are defined by Cal. Civ. Code § 56.05(i).

164.    Defendant is subject to the requirements and mandates of the CMIA and is therefore

required to do the following under the CMIA:

       a.     Ensure that medical information regarding patients is not disclosed or disseminated or released without patients' authorization, and to protect and preserve the confidentiality of the medical information regarding a patient, under Cal. Civ. Code §§ 56.06, 56.10, and 56.101;

       b.     Not disclose medical information regarding a patient without first obtaining an authorization under Cal. Civ. Code §§ 56.06, 56.10, 56.35 and 56.101;

       c.     Create, maintain, preserve, and store medical records in a manner that preserves the confidentiality of the information contained therein under Cal. Civ. Code §§ 56.06 and 56.101(a); and

       d.     Protect and preserve confidentiality of electronic medical information in their possession under Cal. Civ. Code §§ 56.06 and 56.101(b)(1)(A).

165.     Due to Defendant's negligent creation, maintenance, preservation and/or storage of Plaintiff's and the California Subclass members' electronic medical information, Defendant allowed Plaintiff's and California Subclass members' individually identifiable medical information to be accessed by at least one unauthorized third party, constituting a release in violation of Cal. Civ. Code § 56.101.

166.     Defendant disclosed "medical information," as defined in CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). Plaintiff and California Subclass members did not authorize Defendant's disclosure and release of their PII and PHI that occurred in the Data Breach.

167.     Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiffs' and the California Subclass members' medical information in a manner that

preserved the confidentiality of the information contained therein violated the CMIA, Cal. Civ. Code §§ 56.06 and 56.101(a). Defendant transmitted patients' confidential medical information in an unencrypted and unredacted format to Defendant's associates which was then accessed, viewed, and exfiltrated by an unauthorized third party or parties, and thus Defendant negligently released medical information concerning Plaintiff and California Subclass members. Accordingly, Defendant's systems and protocols did not protect and preserve the integrity of electronic medical information in violation of the CMIA, Cal. Civ. Code § 56.101.

168.     Defendant's failure to implement adequate data security measures to protect the PII and PHI of Plaintiff and California Subclass members was a substantial factor in allowing unauthorized parties to access ILS's computer systems and acquire the PII and PHI of Plaintiff and California Subclass members.

169.     As a direct and proximate result of Defendant's violation of the CMIA, Defendants allowed the PII and PHI of Plaintiff and California Subclass members to: (a) escape and spread from its normal place of storage through unauthorized disclosure or release; and (b) be accessed and acquired by unauthorized parties in order to, on information and belief, view, mine, exploit, use, and/or profit from their PII and PHI, thereby breaching the confidentiality of their PII and PHI. Plaintiff and California Subclass members have accordingly sustained and will continue to sustain actual damages as set forth above.

170.     Plaintiff and California Subclass members were injured and have suffered damages, as described above, from Defendants' unauthorized release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and are therefore, in addition to other remedies available at law, entitled to nominal damages of one thousand dollars ($1,000) for each violation under Civil Code §56.36(b)(1) or the amount of actual damages, if any, for each violation under

Civil Code §56.36(b)(2).

171.    Plaintiff and California Subclass members also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23, Civil Code § 56.35, and California Code of Civil Procedure § 1021.5.

**COUNT 6**

**CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**On Behalf of Plaintiff and the California Subclass**

172.    The California Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the California Subclass, repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

173.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201.

174.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and fraudulent business acts and practices.

175.    Defendant's "unfair" and "fraudulent" acts and practices include omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and California Subclass members' PII and PHI.

176.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including California's Confidentiality of Medical Information Act ("CMIA") Cal. Civ. Code §§ 56 *et seq*.; California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification); the FTC Act, 15 U.S.C. § 45; HIPAA; and California common law.

177.    Plaintiff and California Subclass members conferred a benefit on Defendant—payment for medical services—in reliance on Defendant's omissions.  Had Defendant disclosed

38

in any form, whether verbally, in writing, or via electronic disclosure that it did not reasonably and adequately secure patients' PHI and PII, Plaintiff and California Subclass members would not have sought or purchased services from Defendant.

178.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Defendant as they would not have paid Defendant for goods and services or would have paid less for such goods and services but for Defendant's violations alleged herein.

179.    Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their PII and PHI; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT 7

### CALIFORNIA CUSTOMER RECORDS ACT ("CRA"), Cal. Civ. Code §§ 1798.80, *et seq.*

### On Behalf of Plaintiff and the California Subclass

180.    The California Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the California Subclass, repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

181.    ILS is a "business" under § 1798.80(a) because it is a "sole proprietorship, partnership, corporation, association, or other group … organized … under the law of … any other state …"

182.    Plaintiff and the California Subclass are "customers" under § 1798.80(c) because

they provide "personal information" within the meaning of §§ 1798.80(e) and 1798.81.5(d)(1) to Defendant for the purpose of obtaining a service from Defendant, either directly or indirectly.

183.   Defendant conducts business in California and owns or licenses computerized data which includes the personal information of Plaintiff and the California Subclass, within the meaning of Cal. Civ. Code § 1798.82(a) and (h).

184.   CRA § 1798.81.5(b) requires Defendant to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

185.   CRA § 1798.82(a) requires Defendant to "disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person … The disclosure shall be made in the most expedient time possible and without unreasonable delay …"

186.   CRA § 1798.82(b) requires Defendant "to notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

187.   The Data Breach is the result of Defendant's failure to implement and maintain reasonable security procedures and practices to protect the personal information of Plaintiff and the California Subclass, and therefore, Defendant has violated the CRA.

188.   Defendant has further violated the CRA by failing to notify Plaintiff and the California Subclass about the Data Breach expediently, unreasonably relaying the notice to Plaintiff and the California Subclass, and failing to immediately notify them that their personal

information was reasonably believed to have been acquired by an unauthorized person.

189.    Defendant's violation of the CRA has injured Plaintiff and the California Subclass as described above.

190.    Plaintiff and the California Subclass are therefore entitled to damages.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff and Class Members demand judgment as follows:

A.    Certification of the action as a Class Action under Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

B.    That acts alleged above be adjudged and decreed to constitute negligence, negligence *per se* and unjust enrichment and to have violated California's Confidentiality of Medical Information Act ("CMIA"); Unfair Competition Act; and the Customer Records Act ("CRA");

C.    A judgment against Defendant for the damages sustained by Plaintiff and the Class above, including compensatory, consequential, general, nominal and or punitive damages as appropriate, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class, including, but not limited to:

1.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

2.      Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

3.      Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

4.      Ordering that Defendant segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, unauthorized third parties cannot gain access to other portions of Defendant's systems;

5.      Ordering that Defendant purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

6.      Ordering that Defendant conduct regular database scanning and securing checks; and

7.      Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

E.      That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

F.      That Plaintiff and Class Member be granted declaratory relief sought herein;

G.      By awarding Plaintiff and Class Members prejudgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after service of this Complaint;

H.      The costs of this suit, including reasonable attorney fees; and

I.      Such other and further relief as the Court deems just and proper.

## VIII.   <u>JURY TRIAL DEMANDED</u>

Plaintiff, individually and on behalf of all those similarly situated, requests a jury trial, under Federal Rule of Civil Procedure 38, on all claims so triable.

DATED: April 18, 2023                    Respectfully submitted,

*/s/ Lindsey C. Grossman*

Michael E. Criden
Lindsey C. Grossman
**CRIDEN & LOVE, P.A.**
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Tel.: (305) 357-9000
mcriden@cridenlove.com

Michael A. Hanzman
Mitchell E. Widom
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Tel.: (305) 374-7593
mhanzman@bilzen.com
mwidom@bilzen.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

*Attorneys for Plaintiff and the Proposed Class*